UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD W. HOFER,<br><br>        Plaintiff,<br><br>        v.<br><br>GRAIL SEMICONDUCTOR, INC.;<br>NIRO, HALLER AND NIRO, LTD.;<br>RAYMOND NIRO; DONALD STERN;<br>ROBERT STERN; and RICHARD<br>GILBERT,<br><br>        Defendants. | No.  2:15-CV-02207-MCE-EFB<br><br>**MEMORANDUM AND ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

      In instituting the present lawsuit, Plaintiff Robert Hofer, the former Chief Executive Officer ("CEO") for Defendant Grail Semiconductor, Inc. ("Grail") seeks damages for Grail's alleged failure to pay his agreed-upon salary and other compensation, including a share of litigation proceeds obtained by Grail through its settlement of a longstanding lawsuit against Mitsubishi Electric & Electronics USA, Inc. ("Mitsubishi lawsuit").  In addition to Grail, Plaintiff also names Grail Board of Directors members Donald Stern, Robert Stern and Richard Gilbert as Defendants along with Raymond Niro, the attorney who represented Grail in its lawsuit against Mitsubishi.

      Plaintiff instituted his lawsuit on October 24, 2015, and the next day filed an Ex Parte Motion for a Temporary Restraining Order ("TRO").  (*See* ECF No. 4.)  That Motion seeks to

prevent Grail from disbursing, transferring, or otherwise disposing of any funds received from its settlement of the Mitsubishi lawsuit so as to protect Plaintiff's asserted right to some 5 percent of those settlement proceeds as a "priority" creditor.

Grail's counsel (located in Chicago, Illinois) contacted the Court after receiving Plaintiff's ex parte application, stating that the logistics of securing local counsel for a pro hac vice basis posed logistical challenges in terms of getting its opposition on file as soon as possible for the Court's consideration. The Court directed counsel to submit its opposition, which it did by direct email with concurrent service on Plaintiff's lawyers. While the Court reviewed that opposition (along with a declaration received from Defendant Richard Gilbert) due to the time constraints involved, Grail and Gilbert are directed to file the documents they submitted once the necessary appearances have been made so that the Court's record is clear. Plaintiff has submitted a reply to Defendants' opposition. (*See* ECF No. 5.)

Having now reviewed the papers submitted both in support of and in opposition to Plaintiff's Ex Parte Motion, and for the reasons set forth below, Plaintiff's Motion is DENIED.

**I.   BACKGROUND**

Defendant Donald Stern incorporated Grail in 2000 to market certain innovations he claimed to have developed, including semiconductor technology designed to make a compact disc to start automatically when inserted into a computer. According to Grail, after Stern provided that technology to Mitsubishi pursuant to a Non-Disclosure Agreement, Mitsubishi marketed the technology as its own and reaped tremendous profits from its use of the technology. This caused Grail to sue Mitsubishi for breach of that agreement in 2007. (See Compl., ECF No. 1 at ¶¶ 11–13.)

By 2010, when Grail hired Plaintiff as CEO, Plaintiff claims the company was in precarious financial condition. Due in part to the enormous cost of the ongoing litigation against Mitsubishi, Grail had to borrow substantial sums to meet its ongoing financial obligations. Plaintiff claims he was hired "to oversee the case to completion." (Id. at ¶ 15; Hofer Decl., ¶ 5.) As an "incentive" for taking on that role, Plaintiff contends he was to be paid a base salary of $240,000 and was further promised a five percent share of any gross recovery received by Grail

1  as a result of the Mitsubishi lawsuit.  (ECF No. 1 at ¶ 16.)  Plaintiff alleges those promises were
2  memorialized in an Employment Agreement, but Plaintiff has failed to attach that Agreement to
3  his papers.

4        In 2012, apparently in order to reduce the ongoing cash outflow for prosecuting the
5  Mitsubishi lawsuit, Grail hired Defendant Raymond Niro of the law firm of Niro, Haller and
6  Niro, Ltd. ("Niro") to handle the case on a contingency basis.   That contingent fee agreement
7  was specifically denominated as being both construed and subject to enforcement under the laws
8  of the State of Illinois.  It provided for compensation to Niro in the sum of 30 percent (subject to
9  certain exceptions) of any gross recovery received.  Plaintiff and Donald Stern, as CEO and Chief
10 Technology Officer of Grail, respectively, executed the agreement on Grail's behalf.   Although
11 the agreement further indicated that a total of five other individuals, including Plaintiff, were also
12 to receive some portion of any overall recovery, those additional amounts were not specified.
13 (See Agreement, Ex. C to Niro's Opp.)

14       Plaintiff claims that a separate "Priority Agreement," issued "in or about October of
15 2014," ultimately identified the priority of disbursements from any litigation recovery.  After Niro
16 and the entities involved in providing litigation financing to Grail were paid as secured creditors,
17 Plaintiff claims that he was to obtain five percent, with the four other individuals receiving a total
18 of fourteen percent before the remainder of the proceeds were paid to Grail itself.  Again,
19 however, the "Priority Agreement" has not been provided to the Court for its consideration and
20 review.

21       The Mitsubishi lawsuit initially went to trial in state court in 2012, and after three weeks
22 of testimony and evidence a jury verdict in Grail's favor was returned for $124 million.  A new
23 trial was granted as to damages, however, and that decision was subsequently affirmed on appeal
24 by the state appellate court.  A new trial on damages was scheduled to begin on October 26, 2015.
25 (ECF No. 1 at ¶¶ 24–25.)

26       In anticipation of that trial, both Mitsubishi and Grail agreed to participate in further
27 mediation, which was conducted on October 5, 2015 in San Francisco.  The case ultimately
28 settled.  According to Richard Gilbert, the extent of Grail's substantial debt was freely raised

1  during the course of mediation, and the issue of creditors taking reduced payments was openly
2  discussed.  Contrary to Plaintiff's contention, both Gilbert and Donald Stern adamantly deny that
3  any agreement or representation was ever made to pay Plaintiff his claimed five percent cut of the
4  gross settlement proceeds in exchange for Plaintiff signing the agreement on Grail's behalf.  (See
5  Gilbert Decl., pp. 9–10.)
6  　　　　On October 14, 2015, a special meeting of Grail's board was convened to formally ratify
7  the settlement with Mitsubishi.  Although Plaintiff had signed off on Niro's contingency
8  agreement some three years prior in 2012, and while Niro had taken the case through trial and
9  appeal since that time, Plaintiff tried to rescind the operating fee agreement with Niro during the
10 special meeting, allegedly on grounds that it failed to comply with California law even though it
11 was executed between an Illinois law firm and Grail, whose principal place of business was
12 located in Florida.  (ECF No. 1 at ¶¶ 31–36, 2–3.)
13 　　　　The board unanimously rejected Plaintiff's attempt to rescind Niro's fee agreement.
14 Although Plaintiff tried to intervene in the state court lawsuit to assert his fee interest, given the
15 dismissal of that lawsuit in accordance with its settlement, the state court judge declined that
16 intervention request, thereby prompting the filing of the present lawsuit.  Plaintiff claims that
17 once he was notified on October 21, 2015, that the Board revoked his corporate powers and
18 authority as CEO, he was constructively discharged even though his employment with Grail was
19 not terminated.  Plaintiff, however, concedes that the letter he received specifically provided that
20 he was <u>not</u> being terminated.  (See Stallard Decl., ¶¶ 13–14.)  Plaintiff nonetheless claims he is
21 owed his October monthly salary, along with other recently incurred expenses, even though the
22 month of October is not yet over.
23 　　　　In moving for a TRO, Plaintiff also claims that if he is not paid his purported share of the
24 Mitsubishi action proceeds, any available funds will be dissipated since creditor's claims against
25 Grail will far exceed the remainder of the funds held by Niro in trust for Grail once Niro has paid
26 the secured lenders as well as its own perfected position under the contingency agreement.
27 Plaintiff contends that unless immediate action to enjoin further payment by Niro is taken, it will
28 be left to "fight over" any remaining proceeds with all the other Grail creditors.  The proposed

order submitted by Plaintiff in connection with his application makes it clear that Plaintiff believes he "has priority over other creditors of his [former] employer," and that he will suffer "immediate and irreparable injury" if his right to the settlement proceeds is not protected.

## II.     LEGAL STANDARD

The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction. See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438–39 (1974) (temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); see also Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006); Dunn v. Cate, No. CIV 08-873-NVW, 2010 WL 1558562, at *1 (E.D. Cal. April 19, 2010).

Issuance of a temporary restraining order, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). In general, the showing required for a temporary restraining order and a preliminary injunction are the same. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature. Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in plaintiffs' favor. Alliance for Wild

…

Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

In order to qualify for injunctive relief under either variant, Plaintiff must, at minimum, demonstrate a "fair chance of success" that his claims will ultimately prevail on their merits. *See, e.g.*, Johnson v. Calif. State Bd. Of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995). This means that Plaintiff must demonstrate some likelihood of obtaining a favorable result in his case in chief. Original Appalachian Artworks v. Topps Chewing Gum, 642 F.Supp. 1031, 1034 (N.D. Ga. 1986); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1005, fn. 3 (9th Cir. 2001). In addition, Plaintiff must also demonstrate a significant threat of irreparable injury. Simula, Inc. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999).

**III.   ANALYSIS**

As stated above, Plaintiff's stated objective in seeking the emergency injunctive relief of a TRO is to obtain a preliminary finding that his purported interest in the Mitsubishi lawsuit proceeds "takes priority over other creditors of his employer". Given that claimed priority, Plaintiff asks the Court to enjoin Defendants from disbursing any of the Mitsubishi settlement funds. Given the extraordinary remedy entailed by the injunctive relief Plaintiff seeks, however, he has the burden of establishing the propriety of that relief through clear and convincing evidence. Kinman v. Wells Fargo Bank, N.A., No. 2:12–cv–02853–MCE–DAD, 2012 WL 6096984 at *1 (E.D. Cal. Dec. 7, 2012), citing Mazurek, 520 U.S. at 972. After careful review of the papers and evidence submitted to date, the Court concludes that Plaintiff has not made that showing.

First, Plaintiff's argument that Niro's contingent fee agreement is voidable because it fails to contain specific language required by California law[1] appears to border on the frivolous. The fee agreement unequivocally provides that the Agreement "shall be construed under the law of the State of Illinois, and any disputes concerning the agreement… shall be resolved in Chicago,

---

[1] According to Plaintiff, California Business and Professions Code § 6147 requires that contingency fee agreements contain certain statements not required in the Niro fee agreement.

6

Illinois, under Illinois law." (Agreement, Ex. C to Niro Opp., p. 9, ¶ 11.) Because the agreement was between an Illinois law firm and a Florida corporation and was made by way of correspondence between Chicago and Naples, Florida, Plaintiff's contention that California law should apply in assessing the viability of the agreement is unpersuasive, and to the extent Plaintiff seeks to enjoin payment of Niro's fee on that basis the Court concludes that no fair chance of success on the merits has been demonstrated.

Second, with regard to the propriety of a TRO protecting Plaintiff's claimed five percent share of the Mitsubishi lawsuit settlement proceeds, the Court is similarly unpersuaded on the basis of the evidence before it that the drastic remedy of preliminary injunctive relief is indicated. Plaintiff does not dispute that Niro, and the financial entities that provided funding to Grail, have secured interests that have to be satisfied before Grail's other creditors are paid. Instead, the dispute rests with whether Plaintiff's entitlement has priority over the company's remaining creditors. The Court cannot make that determination based on the evidence before it, let alone make that determination by the clear and convincing evidence required to merit a TRO.

While Plaintiff claims his Employment Agreement calls for a five percent share of any Mitsubishi lawsuit recovery as part of his compensation package, Plaintiff has not attached a copy of that Agreement. Even if he had, based on the representations made concerning the content of the Agreement there is no indication that it established any priority of that purported share over any other creditor. Indeed, Plaintiff appears to concede that shortcoming by pointing to a "Priority Agreement" made in October of 2014 that purportedly calls for Plaintiff's share of the recovery to be paid in a third priority position after the secured interests of Niro and the financing entities have been satisfied. Again, however, the Court cannot assess the viability of that Agreement because it has not been provided. Tellingly, too, it appears that four other individuals in addition to Plaintiff also have the same alleged third priority, in amounts that total fourteen percent. Those individuals are also creditors who arguably stand in the same position as Plaintiff, yet Plaintiff seeks a TRO finding that his interests have priority over other creditors, which presumably include those individuals. The Court simply cannot make any such assessment at the present time.

7

Significantly, too, while it appears undisputed that Niro and the financing entities have secured interests entitling them to priority, the status of any other creditors of Grail remains unclear. The papers suggest that numerous other creditors will be presenting claims, and there is no indication whether additional secured interests are entitled to priority and whether those interests would take precedence over Plaintiff and the other individuals whose interests are purportedly spelled out in the Priority Agreement. Additionally, to the extent that Plaintiff claims he was promised by Gilbert and Stern that he would be paid out of the settlement proceeds as a condition of Plaintiff signing the Mitsubishi lawsuit settlement agreement on Grail's behalf, that contention is also disputed by Gilbert who claims that no such representation ever took place.

In sum, based on the above, this Court cannot conclude at the present time that Plaintiff has a fair chance of succeeding on the merits of his contention that his interest in the settlement proceeds is deserving of priority protection. Plaintiff therefore has not met the fundamental requirement that such success be demonstrated, and his request for a TRO fails on that ground alone. While it is not necessary to address the remaining prerequisites for a TRO given that shortcoming, the Court notes that Plaintiff premises his claim of irreparable injury on Plaintiff's right and priority to the funds in question, a determination tied up with the merits argument already addressed above. Moreover, while Plaintiff cites the public interest served in having parties honor their contractual and legal obligations, as set forth above, the extent of those obligations remains unclear at the present time.

### IV. CONCLUSION

Based on the foregoing, Plaintiff's Ex Parte Motion for a Temporary Restraining Order (ECF No. 4) is DENIED.[2] Plaintiff may file a regularly noticed Motion for Preliminary Injunction should he chose to do so.

IT IS SO ORDERED.

Dated: October 27, 2015

Troy L. Nunley
United States District Judge

---

[2] Because the Court has concluded that oral argument was not of material assistance in deciding this Motion, it decides the matter on the briefing in accordance with Eastern District Local Rule 230(g).